UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MECHANICAL CONTRACTORS
ASSOCIATION INDUSTRY PROMOTION          Case No. 06-14289
FUND,
                                        Honorable Nancy G. Edmunds
          Plaintiff(s),

v.

GEM INDUSTRIAL, INC.,

          Defendant(s).

_____/


**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT [12] AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [13]**


        Plaintiff Mechanical Contractors Association Industry Promotion Fund ("IPF") filed

this action pursuant to § 301 of the Labor Management Relations Act ("LMRA"), 29

U.S.C. § 185, and the Collective Bargaining Agreements ("CBA's") between Defendant

Gem Industrial, Inc. and the Pipefitters, Steamfitters, Refrigeration and Air Conditioning

Service Local Union No. 636 of the Metropolitan Detroit Area, Michigan ("Pipefitters

636").  Plaintiff alleges that Defendant has failed to pay contributions required by the

CBA's.  Defendant asserts that the CBA's did not apply to the work at issue.  This

matter comes before the court on the parties' cross-motions for summary judgment.  For

the reasons set forth below, Defendant's motion is DENIED, and Plaintiff's motion is

GRANTED.

## I. Facts

Plaintiff is a union trust fund in the Detroit area established pursuant to a trust

agreement and local CBA's. (Def.'s Mot. at 5; Pl.'s Mot. at 1.) The fund collects monies

from contractors based on hours worked by the contractors' employees. (Def.'s Mot. at

5.) The Fund is designed to accomplish a number of promotional activities, including

training, recruitment, and lobbying governmental entities. (Def.'s Mot. at 5; Pl.'s Mot. at

1.)

Defendant is a union construction employer that occasionally performs work in

Michigan. (Def.'s Mot. at 5; Pl.'s Mot., Ex. D at 7.) Defendant is signatory to two local

CBA's with Pipefitters 636.[1] (Pl.'s Mot., Ex. D at 7-9.) Defendant has been signatory to

the agreements since the mid-to-late 90's and has remained a signatory without

interruption. (*Id.* at 7.) Specifically, the two CBA's to which Defendant admittedly is

signatory are between: 1) Pipefitters 636 and the Metropolitan Detroit Plumbing and

Mechanical Contractors Association, Inc. ("Metropolitan") (Pl.'s Mot., Ex. F), and 2)

Pipefitters 636 and the Association of Service and Mechanical Contractors of

Southeastern Michigan ("ASAM") (Pl.'s Mot., Exs. G, H). (Pl.'s Mot. at 2 n.1.) Plaintiff is

a third party beneficiary of the Pipefitter 636 CBA's in that it receives contributions

negotiated by others. *Central States, Southeast and Southwest Areas Pension Fund v.*

*Behnke, Inc.*, 883 F.2d 454, 460 (6th Cir. 1989). As a result, Plaintiff is permitted to

---

[1]Defendant asserts that Pipefitters 636 is a local representative of the United
Association of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry of
the United States and Canada ("UA"), a national union affiliated with the AFL-CIO.
Defendant offers no evidence to support this assertion. Furthermore, Defendant refers to
the Pipefitter 636 CBA's as the "UA Local 636 Agreement" without explanation or support.

recover for Defendant's alleged breach of the CBA's.  *Anderson v. AT&T Corp.*, 147

F.3d 467, 473 (6th Cir. 1998).

The Metropolitan CBA contains the following provision:

> **Industry Fund.**  The Employers agree to contribute the current allocated
> sum for each hour worked by each employee covered by this agreement
> to the Plumbing and Mechanical Contractors of Detroit Industry Fund.
> Effective June 1, 2002, any non Association contractor who, at the time of
> executing this agreement, elects not to contribute to the Industry Fund
> shall notify the Union and Association in writing of his decision, and the
> reasons therefore, and in lieu of contributing to the Industry Fund shall
> contribute a like amount to the Pipefitters Local No. 636 Insurance Fund
> which shall be in addition to the regular insurance Fund contribution
> required by Paragraph 52 of the agreement.

(Pl.'s Mot., Ex. F at ¶ 49.)[2]  Defendant admits that when it is working under the terms

and conditions of the CBA's, it is required to pay into the IPF.  (Pl.'s Mot., Ex. D at 10-

11.)[3]  Defendant also concedes that it is "not aware of any waiver that's ever been given

for [IPF contributions] while working under the terms and conditions of the local

agreement."  (*Id.* at 17.)

In addition to the local CBA's with Pipefitters 636, Defendant is signatory to a

national CBA, the General Presidents' Project Maintenance Agreement ("GPPMA").[4]

(Def.'s Mot. at 6; Pl.'s Mot. at 3.)  The GPPMA applies to certain large-scale projects.

Detroit Edison has entered into the GPPMA for purposes of maintenance work

---

[2]Plaintiff is a legal successor to the promotion funds referenced in the CBA's.  (Pl.'s Mot., Ex. A.)

[3]Plaintiff at times references a CBA that is in effect from July 31, 2006 through May 31, 2008.  (Pl.'s Mot. at 3.)  Because the work at issue in this case occurred before 2006, the Court will not consider the terms of the most recent CBA, but instead will consider the CBA's in effect at the time the work was performed.

[4]The UA also is party to the GPPMA.  (Def.'s Mot., Ex. E at 1.)

performed at its power plants; accordingly, any contractor who performs work at a

Detroit Edison facility is required to sign and abide by the terms of the GPPMA.  (Def.'s

Mot. at 6.)

The GPPMA provides:

> This Agreement is for the joint use and benefit of the contracting parties,
> and the provisions herein defined and set forth shall be construed as
> binding upon and effective in determining the relations between the parties
> and/or subordinate sub-divisions thereof signing hereto: and to set forth
> herein the basic Agreement covering the rates of pay, hours of work, and
> conditions of employment to be observed by the parties hereto.

> It is mutually understood that the following terms and conditions relating to
> the employment of workers covered by this Agreement have been decided
> upon by means of collective bargaining and that the following provisions
> will be binding upon the Contractor and the Unions during the terms of this
> agreement and any renewal thereafter.  It is further agreed that the
> employees working under this agreement shall constitute a bargaining unit
> separate and distinct from all others.  This agreement covers all terms and
> conditions of employment for work being performed hereunder.

> Contractors signed to the President's Project Maintenance Agreement by
> Contract, which is a national agreement, are not required to become
> signatory to a local collective bargaining agreement.

(Def.'s Mot., Ex. E at 3.)

The GPPMA also addresses a contractor's obligation to contribute to fringe benefit

funds:

> Fringe benefits as negotiated in local and/or National working agreements
> shall be paid in addition to wage rates as specified in Schedule "A."  Only
> bona fide fringe benefits which accrue to the direct benefit of the individual
> craft employee are required.  This includes health & welfare funds,
> annuity, vacation, apprenticeship, training funds, and pension funds.
> Construction industry promotional funds are not applicable under terms of
> this agreement.

(Def.'s Mot., Ex. E at 11.)

4

Prior to 2002, Defendant paid into the IPF for work performed at Detroit Edison. (Pl.'s Mot., Ex. D at 11-12). In 2002, however, Defendant states that Detroit Edison instructed it not to pay into the IPF, as such contributions were not payable under the GPPMA. (*Id.*; Def.'s Mot. at 9.) Further, Defendant claims that Detroit Edison instructed Defendant that it would deduct any amount paid into the IPF from payments to Defendant. (*Id.*) Detroit Edison, for its part, asserts that it would not interfere with separate contractual obligations between one of its contractors and a local union. (Pl.'s Mot., Ex. K at 24-26.)

Defendant continued to perform maintenance work for Detroit Edison from 2002 to 2005. (Def.'s Mot. at 7.) Defendant did not contribute to the IPF for that work. Plaintiff argues that the terms of the Pipefitters 636 CBA's require Defendant to contribute. Defendant, on the other hand, states that the terms of the GPPMA govern, under which it is not required to contribute to the IPF for work performed at Detroit Edison.

This matter is now before the Court on the parties' cross-motions for summary judgment.

## II. Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish

5

the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.    Analysis

Plaintiff's claim that Defendant breached the terms of the CBA's arises under § 301 of the LMRA, 29 U.S.C. § 185. Traditional rules of contract interpretation apply to such claims. *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Yard-Man, Inc.*, 716 F.2d 1476, 1479 (6th Cir. 1983). The Court will look to the clear language of the CBA's for clear manifestations of the parties' intent. *Id.* Additionally, the Court will, if possible, construe each provision in a manner consistent with the entire document, and will not construe the agreement in a way that renders a provision meaningless. *Id.* at 1479-80.

6

Defendant properly has identified the central issue before the Court: was the work performed by Defendant at Detroit Edison governed by the Pipefitters 636 CBA's or by the GPPMA? (Def.'s Mot. at 12.) First, though, Defendant seeks to create doubt as to whether it is bound by the terms of the Pipefitters 636 CBA's and, if so, whether the terms of the CBA's encompass the work performed at Detroit Edison. Such efforts are unavailing.

Defendant notes that one of the relevant CBA's is between the Pipefitters 636 and the Metropolitan Detroit Plumbing Mechanical Contractors Association, a group of which Defendant is not a member. (Def.'s Mot. at 7.) Defendant also argues that Plaintiff "has not produced evidence to show that GEM signed any [Pipefitters 636 CBA] subsequent to the 1996 agreement." (Def.'s Reply at 1.) These arguments are of no consequence because Defendant's representative, Steve Johnson, testified that Defendant is signatory to the Pipefitters 636 CBA's and that Defendant is obligated to pay into the IPF when it is working under the terms of those agreements. (Pl.'s Mot., Ex. D at 7-11.)

Defendant also contends that the terms of the CBA's do not encompass work performed at Detroit Edison. (Def.'s Mot. at 7.) Defendant advances two distinct arguments on this front. First, Defendant argues that the CBA's do not apply because such work is covered solely by the GPPMA. The Court will address this argument below. Defendant's second argument is that Plaintiff "is unable to establish that the work performed by GEM at Detroit Edison is 'covered' by the" CBA's. (*Id.* at 16.) The Court rejects this argument. Defendant concedes that the work performed at Detroit Edison was within the geographic jurisdiction of the CBA's. (Pl.'s Mot., Ex. D at 17.) Defendant used 636 labor at a Detroit Edison plant to replace primary steam lines.

7

(Pl.'s Resp., Ex. C at 19.)  Defendant's counsel conceded at oral argument that this type

of work is covered under the terms of the CBA's.  Moreover, Defendant paid into the IPF

for work performed at Detroit Edison before 2002; Defendant did not stop paying

because such work was not covered by the CBA's, but because it was instructed by

Detroit Edison that the terms of the GPPMA prevented such contributions and that

Detroit Edison would deduct any further contributions to the IPF from amounts owed to

Defendant.  (Def.'s Mot. at 9.)

Because Defendant is admittedly signatory to the Pipefitters 636 CBA's, and

because Defendant's work at Detroit Edison falls under the CBA's jurisdiction, the

question remains whether the express terms of the GPPMA relieve Defendant of its

obligations under the CBA's.  The Court holds that they do not.

Defendant's basic argument is that the GPPMA "does not permit" the type of

contributions Plaintiff is seeking, and that the terms of the GPPMA trump the relevant

provisions of the CBA's.  To start, Defendant's interpretation of the GPPMA is not

supported by its express terms.  The GPPMA provides:

> Only bona fide fringe benefits which accrue to the direct benefit of the
> individual craft employee are *required*. . . . Construction industry
> promotional funds are not applicable under terms of this agreement.

(Def.'s Mot., Ex. E at 11.) (emphasis added).  Thus, while Defendant is not required

under the GPPMA to contribute to the IPF, it also is not prohibited from doing so.

Defendant's argument that Detroit Edison prohibits such contributions is similarly

unavailing.  While Detroit Edison may not pay Defendant for contributions made to the

IPF, Detroit Edison has taken the position that it will not interfere with contractual

obligations Defendant has to other parties.

In another attempt to advance this argument, Defendant points out that the GPPMA incorporates various provisions from local agreements (such as the CBA's), but does not incorporate the CBA requirement to pay into the IPF. This argument misses the mark because Plaintiff is not seeking payment under the terms of the GPPMA, but rather under the terms of the CBA's themselves. Accordingly, whether the GPPMA requires payment to the IPF is irrelevant.

Defendant next argues that its obligations under the GPPMA and the CBA's do not operate concurrently. Although Defendant cites to no language in the various agreements to support this contention, and cites to no law that allows the GPPMA to supersede local agreements, Defendant does set forth several grounds to support its assertion. First, Defendant argues that Pipefitters 636 is a local representative of the UA. Defendant also points out that the UA is a party to the GPPMA and even sits on the agreement's interpretation committee. As a result, Defendant argues that the following provision of the GPPMA applies: "This agreement . . . shall be construed as binding upon and effective in determining the relations between the parties and/or subordinate sub-divisions thereof signing hereto." Thus, Defendant argues, Plaintiff is bound by the provision that allegedly prohibits contributions to the IPF.

First, as already discussed, the GPPMA does not prohibit contributions to industry promotion funds; rather, the agreement simply does not require such contributions. Second, Defendant has provided no evidence to substantiate its claim of the relationship between Pipefitters 636 and the UA. Finally, even if such a relationship exists, Defendant has made no showing that the UA has the power or the authority to enter into agreements that trump local agreements by Pipefitters 636.

9

Defendant cites to *NLRB v. IBEW, Local Union No. 16*, 425 F.3d 1035 (7th Cir. 2005), for the proposition that "[t]he applicability of a project-based agreement, such as the GPPMA, over a broader union agreement, is not unusual."  In that case, a single union entered into two CBA's.  The first CBA covered nearly all work performed in a large geographic area; the second CBA covered only work at a specific Toyota plant. *Id.* at 1037-38.  The second CBA contained the following provision: "the terms and conditions of this Project Agreement shall supersede and override terms and conditions of any and all other national, area, or local collective bargaining agreements."  *Id.* at 1038.  The *NLRB* court held that the terms of the second CBA governed the work performed at the Toyota plant.  Unlike the case before the Court, the union in *NLRB* was party to both contracts, and the site-specific agreement expressly superseded all other contracts.  Because neither of those vital facts is present in this case, *NLRB* is not on point.

Defendant's next argument is that "[a]n interpretation requiring concurrent obligations under both agreements would render meaningless the language in the GPPMA creating a separate and distinct bargaining unit."  (Def.'s Mot. at 14.) Defendant contends that because an employee working at Detroit Edison is part of the GPPMA bargaining unit, the employee could not also be an "employee covered by" the CBA's.  (Def.'s Reply at 4.)  This argument falls short in two ways.  First, the GPPMA also provides that signatories "are not required to become signatory to a local collective bargaining agreement."  Thus, the "distinct bargaining unit" language does not become meaningless if Defendant is required to pay into the IPF under the terms of the CBA's

10

because the GPPMA expressly provides that contractors do not have to enter into local CBA's.

Second, and perhaps more importantly, Defendant's proposed interpretation would have far-reaching consequences in the realm of contractual relationships. Under Defendant's approach, a party to a contract could escape its contractual obligations by entering into a separate contract with a different and unrelated party, so long as the separate contract created a "separate and distinct bargaining unit." The Court refuses to sanction a practice whereby a party unilaterally can relieve itself of contractual obligations simply by entering into a separate contract with a separate party.

Defendant's final assertion is that both contracts cannot operate concurrently because they contain conflicting provisions. Defendant states that the separate contracts must be read together and their conflicting provisions resolved. (Def.'s Reply at 3 n.2.) It is true that a standard rule of contract interpretation requires different provisions in a single contract to be read, if possible, in a way that gives force to each provision. *See, e.g., Yard-Man,* 716 F.2d at 1479-80. This rule, however, applies only to terms within a single document. *Id.* ("If possible, each provision should be construed consistently with *the entire document* and the relative positions and purposes of the parties.") (emphasis added). Defendant points to no authority that requires the terms of different contracts with various parties to be reconciled. Indeed, such an undertaking would hardly seem possible. Accordingly, while Defendant may have conflicting obligations under the CBA's and the GPPMA, such conflicts do not relieve Defendant of its commitments under each contract. To hold otherwise would allow a party to avoid its contractual obligations simply by entering into a second, conflicting contract with a different party.

11

The Court therefore holds that Defendant was bound by the terms of the CBA's when it performed work for Detroit Edison from 2002 to 2005.  As a result, Defendant was obligated to pay into the IPF for such work.[5]

## IV.    Conclusion

For the foregoing reasons, Defendant's motion is DENIED, and Plaintiff's motion is GRANTED.


                                              s/Nancy G. Edmunds
                                              Nancy G. Edmunds
                                              United States District Judge

Dated:  January 25, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 25, 2008, by electronic and/or ordinary mail.

                                              s/Carol A. Hemeyer
                                              Case Manager

---

[5]This conclusion is not contradicted by *Joint Administrative Committee of the Plumbing and Pipefitting Industry in the Detroit Area v. Washington Group International, Inc.*, No. 06-14288, 2008 WL 114792 (E.D. Mich. January 9, 2008) (Cook, J.).  There, a contractor was signatory to the GPPMA, but not to a local CBA.  The court concluded that "industry promotion fund contributions, or additional contributions to other funds in lieu of such contributions, are not required by the GPPMA." *Id.* at *5.  This Court agrees.  Defendant in this case is not obligated to pay into the IPF under the terms of the GPPMA, but is obligated to pay into the IPF under the terms of the local CBA's.